All right, the next case we're going to hear this morning is Fauconier v. Clarke, and Mr. Corzine, I think you will be presenting someone. Yes, I will. Thank you, Your Honor. May it please the Court, I'm John Corzine with the Wake Forest Law School Appellate Clinic, and under Local Rule 46A, it's my pleasure to introduce the two third-year law students who have been working on this case. First, Taylor I, and also Don Morgan, who will be doing the argument today for Mr. Fauconier. We're very pleased to have you, pleased for the service, and we'll hear from you, Mr. Morgan. Thank you. May it please the Court, this case is about whether a state prisoner who has been completely excluded from all in-prison work programs based solely on his medical classification stated a claim upon which relief can be granted in his pro se complaint to the District Court for the Eastern District of Virginia, either under the Equal Protection Clause of the 14th Amendment to the United States Constitution or Title II of the Americans with Disabilities Act. Now, the District Court erred in dismissing Mr. Fauconier's complaint with prejudice, first when it dismissed his constitutional claim solely under a due process analysis, when Mr. Fauconier had clearly pled an equal protection claim. The District Court then went on to dismiss Mr. Fauconier's Title II claim based on sovereign immunity, despite the fact that Mr. Fauconier had pled a valid equal protection claim, and the Title II therefore abrogated state sovereign immunity for his Title II claim. And finally, Your Honors, the District Court then dismissed Mr. Fauconier's claims for injunctive relief without any analysis. The dismissal was solely on the grounds of state sovereign immunity, which does not apply to prospective injunctive relief against state officials under Ex parte Young. And finally, it was error for the District Court to dismiss with prejudice. Even if Mr. Fauconier did not state a claim, a dismissal without prejudice was appropriate in this case. Well, if it were. If the whole case were subject to immunity, it would be appropriate with prejudice, wouldn't it? Your Honor, I think it is. If you only had a damage claim against the individuals and the court dismissed it for qualified immunity, wouldn't that be with prejudice? If the District Court determined as a matter of law that the defendants were entitled to qualified immunity, I apologize for your claim. against the individuals they have and the court finds as qualified immunity, then that dismissal would be with prejudice, wouldn't it? That's correct, Your Honor. However, here there was a claim for injunctive relief in addition to damages. And in addition to that, the District Court did not address qualified immunity. It dismissed on the grounds of state sovereign immunity because Title II only abrogates state sovereign immunity to the extent that the conduct is unconstitutional. And because it dismissed Mr. Fauconier's constitutional claim under an improper analysis, solely under due process, not under equal protection, it then dismissed his entire Title II claim just based on that ground. So in here, Mr. Fauconier did state a claim upon which relief can be granted under the Equal Protection Clause of the 14th Amendment to the United States Constitution. Now, the Equal Protection Clause, as you know, protects against government discrimination. And all Mr. Fauconier needed to allege were facts that show that he was treated differently than other inmates who were similarly situated to himself and that that discrimination was not reasonably related to valid penological interests. And here he pled enough facts to show, especially looking through the lens of him being a pro se litigant, which means that his pleadings are liberally construed and have to be held to a less stringent standard than pleadings drafted by attorneys. He pled enough facts to show both of those, at least enough to go forward past failure to state a claim. Mr. Fauconier pled that he has been excluded from all in-prison work programs based solely on his medical classification. Do we know what – he was given a D classification, right, I guess for disabled. But do we know what the language of that classification is? Is there some rule or regulation that sets that forth? That information is not in the record, Your Honor. And while the Virginia Department of Corrections operating procedures set out the procedure for sending an inmate to a doctor to get a medical classification, the criteria for those classifications are not in those operating procedures. They appear to be contained in a medical and nursing guidelines set of documents that are not available to the public and are not in the record. Had Mr. Clark – excuse me, Fauconier, is that how we're pronouncing it? I've been saying it, Mr. Fauconier, but I think either is fine. Okay, that's fine. Had he been classified before you went to this recent hospital stay? Based on the record, yes. He alleges, and I believe it's paragraph 29 of the complaint, that there was no change to his medical classification. Well, I know that. But he went to the hospital, he came back, and they wouldn't let him have a job until he got classified, right? I believe that he was classified. Or was he classified? I believe from the complaint that he was classified as medical classification D both before and after that medical college – So before he was doing the jobs, he was doing various jobs with a D classification, and then after he was denied those jobs. I believe that's the case, Your Honor, yes. Could I clarify one other thing? You indicated that the OP841 to the governing documents aren't in the record. So you wouldn't know – you may not know, it may not be in the record, for instance, whether or not the medical personnel making the classification are responding to such a criterion as ability to work. We just don't know. That's correct. Do we know? Do we know? We don't know. We don't know. That's correct. The Virginia Department of Corrections operating procedures, I believe both parties have requested that the court take judicial notice of those, but the criteria for medical classification D aren't in those documents. They're in another set of documents that we don't believe are available to the public, and so those would need to come out in discovery if the case were remanded. Thank you. You're welcome. So further, Your Honors, as I said, Mr. Falconier did allege facts that show that he was treated differently than similarly situated – Your biggest argument, basically, is the court didn't address equal protection and didn't address the injunction. That's correct, Your Honor. Because the other parts, the damage claims, are harder for you to advance. That's correct, Your Honor. However, I believe that he did state a claim under the equal protection clause, and because of that – Yeah, I understand that. I understand that argument, and the court didn't address that at all. It just addressed the due process issue. That's correct. And he'd been transferred by now? He has been transferred to Augusta Correctional Center. He's in a different facility. That's correct. Do we know whether he's subject to the same operating procedures? I believe there's enough in the record that shows that there's more than a reasonable expectation that this is going to be applied in the same fashion. The Virginia Department of Corrections operating procedures, specifically this 841.2, is also in effect at Augusta. The text of the procedure itself states that this procedure is in effect at all Virginia Department of Corrections facilities. And further, because it's the application of this procedure that is being challenged, a regional administrator, an official outside of Powhatan, upheld the Powhatan official's decision to apply medical classification D as a complete bar to all in-prison work programs, regardless of the inmate's individual abilities to participate in those programs. Part of the, I think, difficulty here may be that the district court dismissed before there was a responsive filing. So there's a lot of information we don't quite have. I would agree, Your Honor. There was never an answer filed because this was dismissed under that screening statute. And so there's a lot of information that just isn't in the record that would come out in the preliminary stages of discovery and then could be addressed at the summary judgment stage or at trial. Do the operating procedures make the medical classification dispositive? They do not. They allow the consideration of several factors, including medical classification as well as other factors. And in addition, Your Honors, at the very least, Defendant Clark, one of the named defendants, is the director of the Virginia Department of Corrections. So by virtue of that position, he does have ultimate control over the application of these procedures, both at Augusta and at Powhatan. Is that why they pronounce that down here, Virginia? Powhatan? I'm not sure, Your Honor. I'm doing my best. I'm just from Virginia. I'm not from Virginia either. I think they call it Powhatan or something. I don't know. Couldn't tell you. Powhatan sounded fine to me. One point I would like to make, Your Honors, is that this court doesn't have to decide, as a matter of law, that the Turner factors deciding whether this discrimination is reasonably related to valid penological interests, you don't have to decide that this dispositively weighs in Mr. Falcone's favor, only that he pled enough backs that there is a plausible claim and that that should go forward to be decided, as I said, either at summary judgment or at trial. And while I was not able to find any cases squarely presenting the question in this circuit, cases in the Tenth Circuit, the Seventh Circuit, and the Northern District of Iowa have held that these factors really present some issues of fact or factual disputes that are better addressed at the summary judgment stage or at trial. And one of those that I really would like to address today is the impact of the accommodation on prison resources. You know, obviously there's concern that a federal court especially doesn't want to Can we consider all that? I mean, your argument is we need to develop this and not only develop it with respect to what was disposed of, but with respect to the claims that weren't addressed. And it would be hard for us now to get into policy considerations, isn't it, to whether you apply D when we don't know what it is to prisoners and sometimes allow them to work and sometimes not allow them to work. We're at a very early stage, aren't we, in this case? We absolutely are, Your Honor. From your point of view, we're at the beginning and you want a chance to flesh it out. Exactly. Is that your argument? Exactly. But the point I want to make about that factor isn't that it dispositively weighs in his favor, but as of right now there is enough in the record to show that he's stated a plausible claim because the district court dismissed for failure to state a claim. And so all Mr. Falcone has to do, or all this court has to do today, is to determine that there are enough facts alleged in the complaint that this makes it over that screening statute and gets to go forward to have discovery and to have an answer filed. Okay. Thank you. Is that it? The last point I'd like to make, if I may, Your Honor, is that even if this court determines that Mr. Falcone didn't state a claim, in this case a dismissal without prejudice was appropriate and a dismissal with prejudice was not. In Cosner v. Dott in 2013, a panel of this court held that the district court erred in dismissing a pro se complaint like this one where the pro se litigant had included facts in the complaint. I get back to my first question to you is it seems to me if the court dismissed this based on immunity, then its decision would be with prejudice. It would never be without prejudice because he's not going to give them another shot if there's immunity. Your argument is that the immunity doesn't apply or wasn't addressed or wasn't covered by Ex parte Young. But if the court was correct in its immunity, that's what it rested on, immunity, and dismissed this case, it would have to be with prejudice, wouldn't it? That's correct, Your Honor. If the district court evaluated all of his claims. I understand, but my point is that you can't argue that the court was wrong with prejudice part. Your argument is the court was wrong in applying the immunity and not addressing all the subjects. That's correct, Your Honor. However, because this court could affirm or can reverse for any reason supported by the record, I just wanted to make clear that even if you find that he didn't state a claim under the Equal Protection Clause or that injunctive relief is not appropriate or is moot, that there are facts that he didn't plead because of his status as a pro se. My question only addressed your argument and you sort of continue to press it that it was error to say it was with prejudice. And I'm not sure you can make that case. In other words, if the court dismissed this case correctly, it's going to be with prejudice. And that's the way the court looked at it. Your problem is that, number one, the court was wrong, and number two, the court didn't address all your claims. Correct, Your Honor. However, I believe the… You have the injunctive relief. That's correct. And I believe that if the district court on this complaint had dismissed, based on immunity, that there were facts that Mr. Falcone had at his disposal that he didn't know to plead as a pro se. But that argument addresses the immunity, whether the court was right or whether the court should have interposed immunity at this stage. That doesn't address whether it should have been with prejudice or not, or thought it was correct. It's going to do it with prejudice, right? I mean, if the court's right about immunity, there's not going to be another shot at it. You don't get another shot. I think if the court is right about immunity, I believe the point here, and what happened in Cosner v. Dott was that there were facts in the informal brief to this court that weren't in the complaint, that really should have been, that the pro se litigant didn't know to include. And here, there are facts in Mr. Falcone's brief to this court, such as his diagnosis, that would have made an equal protection claim clearer on the face of the complaint, that might have allowed it to get over that 1915A screening statute hurdle, that he simply didn't know to include because he was a pro se litigant. Thank you, Your Honor. Okay, thank you, Mr. Morgan. Mr. McGuire. Good morning, Your Honors, and may it please the court. Matt McGuire from the Attorney General's Office on behalf of the Commonwealth. There are really three points that I want to focus the court's attention on this morning. First, Mr. Falcone cannot state a claim for damages under the equal protection clause because he did not allege that he was treated differently from other similarly situated individual inmates. How do you define similarly situated? Your Honor, we believe here in this case that he needed to allege that he was treated differently from other medical classification D inmates. So a person can't come to court and say I'm black and I was fired because I was black and that doesn't state an equal protection clause? Your Honor, it could under certain circumstances. This man says they've labeled me as disabled but I've been working and all of a sudden they stopped me from working. Now isn't that about the same thing? They're treating a disabled person differently than other disabled persons perhaps. We don't know the classification but I don't think he has to put comparators up there. He has to put the fact that other inmates could work and he wasn't allowed to work. And the reason he wasn't allowed to work was a classification was imposed on him that was unconstitutional. That's his allegation. And if that's particularly true it seems to me because this particular classification wasn't mandatory. I'm not even sure how you can point to even a comparator like other people with medical classification Ds which isn't a binding determination. As I understand it, the operating procedures only say that it can be considered. That's right, Your Honor. Under Operating Procedure 841.2, which as Counselor the other side pointed out, we have asked this court to take judicial notice of, does provide... But the court never addressed this whole argument. I mean, should we be addressing an equal protection claim when the district court didn't address it? Well, Your Honor, you certainly have the right to address it because the court can affirm for any basis in the record.  You're right as a theoretical matter. But here we have a situation, a fairly unusual situation, where the guy apparently is overcoming his handicap. He's been working for years in the prison at various jobs. He goes to get some medication for a one-night stand in the hospital. He comes back and they won't give him his job back. And they say, oh, that's because he was classified D. And it was just a categorical application. He applied for numerous jobs afterwards. It can't be considered because you're classification D. Now, isn't there some problem with that? Well, Your Honor, what's important here under the second part of the equal protection analysis is whether or not the department is justified under a rational basis level of scrutiny in having a broad policy that individuals who have been classified by... We don't even know the policy. We don't, yeah. Well, not only do we not know that there is a policy, we don't know to whom the policy applies. We only know that under the express terms of the operating procedures, it doesn't apply across the board. It's not a mandatory policy. There's discretion to not apply the very classification that Mr. Faulconier is challenging. Your Honor, what we do know is that on the basis of the record, as Mr. Faulconier has alleged in his complaint and in the attached grievances, is that what medical classification D means, at least at the Palatant facility, the Palatant facility which is now closed... Is that policy in the record? Is the medical classification D policy in the record? No, Your Honor. Just the... They said it's not even public. Your Honor, I agree with co-counsel. Is that a valid answer or anything? No, Your Honor, and in preparing for the argument, we didn't undertake an extensive review because we were limited to the record as it exists here. Doesn't it strike you as peculiar that you have an employment program in the Department of Corrections as intended to help prisoners rehabilitate, to get a little bit of stability in their lives, to get some purpose, give them a little pocket change, and this man is working for all these years, and then all of a sudden he's cut off? With no... He claims no change in his medical condition. Let's assume that's true, which we must. Doesn't that... Isn't there something awry in that factual scenario? It seems to me the institution should be favoring this man and letting him try. If he can't do it, that's another issue. But it seems to me he was doing it. He got satisfactory reports. Well, Your Honor, I can't speak, as you say, from the record. We have to make it true that he was employed. And he had the same medical classifications over years. But even if the department either... Do you agree with their construction of the complaint? It has to be looked at, taken in a light that was favorable to him and viewed liberally because he wrote it up himself. Yes, Your Honor. I would agree with their construction of how we have to read the facts in this case. But here, what's important to recognize is that the department's policy is, and first under some of this court's cases, I think... What policy are we talking about? That the department's policy, the medical classification... How do we know what the policy is? You just told us we don't have it. Well, we know from the grievance process that Palatine officials applied a policy that individuals classified medical classification D by their doctor or by the prison staff. Well, actually, we don't know that. I mean, that's one of the things that seems to me we don't know. He was working as classified D, wasn't he? He alleges that he was, yes, Your Honor. Okay, now, isn't that a problem? If he's working as classified D, then what you're just stating is contrary to the complaint, that he can't work. Well, Your Honor... Your argument is, and in there, it looks like a mindless application. Every application he did for a job, I think there's about three of them, they say disqualified classification D, automatic. Now, he alleges that for years he's been working and he's classification D. Well, Your Honor, one possibility is that the department changed its policy in the interceding years and they didn't go back to take him out of the job. He didn't allege that, did he? No, Your Honor, he didn't. Well, he alleges... Wouldn't it be better off to have the policy to be able to look at it? Your Honor, it would certainly be better if the policy were in the record, but I don't think that... It absolutely would be. Yes, Your Honor. We know what we're talking about. We know what we're discussing with you. They know what they're discussing. And it's not your fault that it isn't, in fairness. I mean, you never got to respond to the complaint. No, Your Honor. And that the posture handicaps you as much as it does us. Do you ever think about confessing error? Well, Your Honor, we think that on the record, because we do presume that prison officials do act reasonably. Except when a complaint is filed against them that says they didn't act reasonably. Then we have to take that as true, don't we? Well, Your Honor, in Board of Trustees versus University of Alabama, and, Garrett, under the rational basis test, it's Mr. Falconier's burden to... You don't know how to pronounce it either. No, Your Honor. How do you pronounce it? Palatant. Palatant. Pardon? Palatant. Palatant. I was about close to being right. Yes, Your Honor. He's not from Virginia, so he's not held to it, right? I heard Judge K.K. Hall call it Palatant. Could very well be, Your Honor. But he's from West Virginia. But if I could focus the Court's attention briefly, maybe on the qualified immunity prong of the analysis here, because there does seem to be the idea that the department could rely on a broad-based policy, and it's not at all clear. But we don't know what the policy is, and we don't know that they were relying on it. It is the problem, or it's my problem. And why do you get all the benefits of the doubt? I mean, he's alleging facts that seem to suggest at this point that even the policy was applied inconsistently. Quite apart from the fact the policy might be too broad because it's just one of the considerations to be taken into account. But his allegations, as I understand them, is he is disabled. He was classified D. He worked at two or three different jobs. He enlisted them for years. He went to the hospital for one day, stayed overnight on the 14th, came home, and they told him he had to reapply. They said, you can't get a job because you're Classification D. Now, that's his allegation. That's what you have to accept. You can't say, well, it's possible this or it's possible that. It might be, but we don't know that. His allegations, effectively, he has denied. I take his facts as his allegations as true, and the inferences fairly drawn therefrom is true. Then you can talk about the fact. Right, Your Honor. So as I understand his complaint, taken as favorably to him as I can, he alleged he is permanently barred from all prison employment on account of his medical Classification D. He didn't say that. He said just the opposite. He said, I had a Classification D and I was working. So there was something for all these years as a Classification D he was allowed to work. So the classification probably didn't prohibit him. It was one factor that they considered. And then something changed on the single day. Right, Your Honor. We don't know what changed on that day. He could have been working by mistake. There is an evidence in the record. Except he says I didn't have any change in medical condition. Right, he could have. So we do know. He is. We take his facts. We do know. He has been medical Classification D the whole time. That's the best way to read his complaint. And if he was working as a janitor before, why not let him continue working as a janitor? What's the reason you can think of that he shouldn't continue if there was no change in medical condition? Well, Your Honor, the reason that we can think of is that the department has the right to apply a broad policy here. Just because one inmate, and he acknowledges in his brief that there probably are some jobs that he cannot do in prison. So what Mr. Faulconier would like to have is an individualized determination. Gosh, that sounds so much like the Americans with Disabilities Act and Equal Protection. Gosh, he's entitled to individualized consideration? Well, the Equal Protection Clause would allow the department to have a broader policy, Your Honor. If in fact they do. It isn't clear that they do. Well, Your Honor, based on what's in the record it shows that he has been consistently denied on a medical classification D. And Defendant Black, in response to his grievance process, Your Honor, indicated that medical classification D means no work. He doesn't allege in his complaint. And that would be inconsistent with the prison's own operating policy. Isn't that a problem? No, Your Honor. Operating Procedure 841.2 sets out what I would classify as guidelines. And they provide a variety of factors that the work program assignment reviewer can consider. Here, that's Defendant Spencer. And she is allowed to account for security-level medical classification offense history. Let me ask you this, and a bigger question. And this is his equal protection argument. He says the prisoners in the institution can work at various jobs. He said he worked at various jobs. After he came back from the hospital, he was denied work because of his disability. He says that this did not serve any penological interest. Now, what do you say in response to that broad-braced equal protection argument? Your Honor, we would respond that his medical classification was assigned by a doctor, and that because the way the grievance process came out was that that doctor's medical classification means no work, and that it's reasonable for department officials to rely on a doctor's independent medical classification. There are potentially issues with arbitrary line drawing. If you did have two medical classification D inmates, and the offender worked for them. He represents two classified D inmates. On day one, he's working, and on day three, he's not working. And he says there's no change in my medical condition. Right, Your Honor, but there could have been a change in prison policy. Well, that could be an equal protection violation. If it's not rational, Your Honor. He offers that Turner v. Safley and Your Honor use the What makes you think it's rational right now, based on his obligation? It's rational for department officials to rely on a doctor's independent medical classification. So any time they change, even though they infringe on equal protection clause, because it's rational, we just approve it? Well, Your Honor, it's rational-based scrutiny in this case. He argues that Turner v. Safley's framework applies. But shouldn't we know why they changed their mind? Did they change their policy? You can't even say they changed their policy. Your Honor, I agree that it would be more helpful if we had a fuller record in this case. It may be necessary. Your Honor, but under section 1915A, it was added to the code as part of the Prison Litigation Reform Act in response to numerous prisoner lawsuits. And so here, the district court act Don't you think this one might be a little different from the run-of-the-mill one? Your Honor, I will say that This guy's not claiming a hot shower. He's not claiming four meals a day. He's not claiming things that we see a lot of. This guy's claiming, I was working, and now they took it away from me. I'm trying my best. They have a policy to help out prisoners, to give them jobs. And my medical, I went to the hospital, came back. They administered some medicine or something, came back, and I'm in the same condition, and they don't let me work. Yes, Your Honor, but the ultimate, what he ultimately seeks in this case is to have the doctor's medical classification, the doctor's decision second-guessed. But I would also posit that We don't know that because we don't know. We don't know. I have no sense of what the doctor's medical classification encompasses, whether it even speaks to ability to work. And if it speaks to ability to work all categories of jobs or just some jobs, it's just we're absolutely blind here in terms of what the medical classification means. All we know is, at least from the operating, whatever they are, they can be ignored. Yes, Your Honor, but even in this case, such as this, qualified immunity could still be appropriate here because no court We have an injunctive relief claim. At least with respect to the damages claim. How are you going to handle the ex parte Young issue? Your Honor, he has been transferred from Palatine Correctional Center because it's now closed. All the allegations in his complaint, all the factual allegations relate to the actions of Palatine. Is this a statewide policy? Operating Procedure 841.2, it does apply across all of the department's prisons, but as Judge Duncan has said So you're claiming it's moot, his claim? Yes, Your Honor. You are saying it's moot. His claim is injunctive. I think you say it's moot if the same policy applies to all prisons and you would expect that they apply them uniformly. We don't know that they apply them uniformly. We don't know it, but we would expect it, wouldn't we, if you have a regulation that applies to all the institutions? That regulation applies to all the institutions. And defendant Clark is in charge of all the institutions. That's right, Your Honor, but each institution has a different composition of inmates. What might be appropriate for individualized review You want to speculate on another set of facts, conjure up a set of facts that's favorable to you and use it to justify No, Your Honor, but under the PLRA, to have a state of claim for injunctive relief granted, it would need to be narrowly tailored. And here, because all of his allegations relate to the actions of a handful of individuals He just wants the policy to be applied in a manner that serves penological interests. And if it's not, if it's arbitrarily applied, as you're suggesting in your hypotheticals he says that's a violation of the U.S. Constitution and therefore also a violation of Title II. No, Your Honor, we're not suggesting it's arbitrarily applied. We're suggesting that there are guidelines so that prison officials at each prison can account for their local policies. But what's really important here is that we don't actually know what's happening at Augusta because although he pled that he had been transferred it is in his complaint that he left Powhatan. He does not make any allegation that he is suffering from the same treatment at Augusta Correctional Center. And in the event that he is, he can regrieve the process there, point to the specific facts at Augusta, and bring his claim again on the injunctive relief side. On the damages side, qualified immunity should apply simply because no court has ever held that department officials would violate the Equal Protection Clause by relying on a doctor's assigned medical classification. What if the doctor's medical classification said he's disabled because he's blind? Or deaf. He's deaf and he's therefore disabled. And so they send that over and the policy says you can take that into account. There are other factors to take into account. And he says, I'm deaf, but I can still clean the common area. I can still serve food. Those are the things he was doing. Now, what's the problem with that? Your Honor, there may not be any problem with it, but in the prison environment, the prison officials are entitled to make that judgment call. You're supposing everything in your favor, instead of taking all the inferences in his favor and accepting his allegations as true. And at this stage, we're not entitled to do that, are we? Well, Your Honor, assuming in your hypothetical that it was an inmate who suffered was either deaf or blind and could potentially perform some of these tasks, even if that is all true, it's still rational for the department officials to conclude that in the prison setting, it's easier to blanketly screen certain categories of individuals based on how a doctor has assigned their medical classification. All right, and how about you have a prisoner who's declared D because he's deaf and he works for five years deaf at jobs within the prison, goes to the hospital, comes back, and they disqualify him because he's deaf. Now, tell me, does that sound rational? Your Honor, it certainly could be. We're not talking about could be. Why do you keep imposing the speculation that's in your favor? Your Honor, the department has the right to change their policies, and they could decide that... Are you alleging they changed their policies? Your Honor, we don't know. Okay, then you can't argue that. In other words, this record does not support a claim by you that they changed their policies. Your Honor, it would be rational for the department to conclude on day one that he could work because he suffered from a deafness disability, for example, and then conclude on day three that when he needed to apply for a new job, because as the district court noted in its opinion, you have no right to a particular job in prison, so he would have to apply for a new one to conclude that it's no longer reasonable for prison officials to take individual account of inmate circumstances. Do we know that they did that? Pardon, Your Honor? Do we know that they... We don't know. We don't know what happened here. We don't know what they took into consideration. Your Honor, all that we know is that they relied, as they said in their grievance process on medical classes... Which was preexisting, so they didn't, or at least if they relied on it, they relied on it too inconsistently to assert it as a predicate. They relied on it sometime. We know that. Your Honor, we know that they relied on it post-2010 after his hospitalization because his grievance process shows consistently that he was rejected for that particular reason. What we don't know, as Your Honor has continually pointed out, is why he was able to work before his 2010 hospitalization. It's not why. The fact is he says it's equal protection, and the equal protection measures him against all prisoners. Is he treated differently because of his disability? And the question then will become if he's not treated equally in view of the facts. But they have to be developed. And I don't think we're supposed to suppose possibilities, are we? Your Honor... We're supposed to take his claims, accept them as true, and say, is it plausible that it states a claim, accepting those facts as true? Your Honor, I see that my time has expired. Oh, you can answer that if you wish. But I would posit that qualified immunity is appropriate here because the Department officials would not have known that they were violating his rights under the Equal Protection Clause by taking these actions, and that is adjunctive. Well, what if they said to each other, hey, we don't like this guy anymore. We're going to take away his job because he mouthed the back answer. That would be a problem, wouldn't it? That's right, Your Honor, but that would be an arbitrary classification. By relying on the doctors... Well, we do know that it's a doctor's classification. It isn't arbitrary in that sense. They did rely on a medical professional's medical judgment. But somebody in the prison applied the doctor's classification D to deny him a job when earlier they allowed him to have a job, and the classification D doesn't automatically disqualify him. Under the policy, it's a consideration. So somebody made a judgment before he went to the hospital that he could work, and then after he came back from the hospital, he couldn't work. That's right, Your Honor. They decided somewhere in there that medical classification D should help. One day, yeah. Thank you, Your Honor. Yeah, thank you. All right. Mr. Morgan, you have some rebuttal? May it please the Court. I'll be brief. I just have two quick points I'd like to address on rebuttal. The first is the qualified immunity issue. I would just like to point out that qualified immunity is an affirmative defense in the Fourth Circuit, and Fourth Circuit cases have been consistent in that the defendant bears the burden of pleading for qualified immunity and of showing that the rights weren't clearly established. They didn't get a chance to plead, number one. This is the first time they get to present it. Qualified immunity is to protect you from trial, including discovery. And so if it's pretty clear that they're entitled to qualified immunity, I think we should impose it, shouldn't we? This Court is entitled to do so, and I'd like to just in that vein address the supplemental authority that opposing counsel filed. And there was an Eighth Circuit case where the court reached, sua sponte, reached qualified immunity. I just wanted to point out that that dismissal, where the court raised qualified immunity by themselves, was without prejudice. And my last point, Your Honor. It doesn't make it right, does it? Well, I would believe that it is. But my last point would just be to request that if this case is remanded, that this court, like it did in Williams v. Clear, authorize the district court to appoint counsel so that Mr. Falconier has the opportunity to effectively assert his claims. How does that work? Wouldn't the district court do that automatically or not? I don't believe it's automatic, Your Honor. I mean, the court's not prohibited from doing it. Wouldn't you present your request to the district court to ask for counsel, and the court would make a judgment? On remand, Mr. Falconier would renew his motion, which in this case was denied as moved. Well, that's because the court threw it out and thought it could be thrown out. Are you saying that the district court needs authorization from this court to appoint counsel? No, Your Honor, merely that it's helpful. You want a suggestion. Yes, exactly. I'd like to suggest it. You would like a broad hint that that would be a good idea? Absolutely. You could just go down there and do it. Well, I'm not licensed to practice, fully licensed to practice law, so I'm not sure that I could, but. What year are you? Third year, Your Honor. You're just about ready to get your license, aren't you? Very close, but in Kentucky. You're a third year student, right? That's correct, Your Honor. You could try in Virginia, you know, it's not a bad place. I like Virginia, but I've got to go where I have a job. All right, well, thank you. Thank you, Your Honor. We want to recognize the court appointment of Mr. Korsen and the student group. This is very helpful to the court and to the disposition of the issues, and we want to recognize your good service. We'll come down, and Greek counsel will take a short recess. The Honorable Court will take a brief recess.
judges: Paul V. Niemeyer, Robert B. King, Allyson K. Duncan